The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. As aforementioned, all stipulations contained in the Pre-Trial Agreement are received into evidence.
2. Subsequent to the hearing, the parties submitted an indexed set of medical records in a black notebook. This set of records was marked as stipulated exhibit 1 and received into evidence.
3. Subsequent to the hearing, the parties submitted a set of records beginning with a copy of a Form 22. This set of records was marked as stipulated exhibit 2 and received into evidence. (four pages)
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a thirty two year-old female who had worked for the defendant-employer for over four years as an industrial winder. At the time of the hearing, plaintiff could not open and close her left hand without pain or pick up an object without pain. At the time of the hearing, plaintiff was experiencing pain radiating into her left shoulder.
2. Plaintiff had been employed by the defendant-employer as an industrial winder. Plaintiff's regular job duties required plaintiff to doff off anywhere between 900 to 1500 cones of thread per day with her left and right hands. Plaintiff had to take the cones on and off spindles as a regular duty of this job. The cones would slide on to the spindles.
3. Prior to March 23, 1993 plaintiff had not experienced problems with her hands and wrists.
4. On March 23, 1993 plaintiff was moved from the machine she usually operated to a new machine in order to complete a special order. Plaintiff was required to place cones on the spindles of this new machine. The spindles on this new machine were different from her old machine in that the spindle's dimensions on this new machine were in the shape of a square. Plaintiff had to apply a greater degree of pressure to get each cone on to the spindle of this new machine than the degree of pressure that she had to apply to the machine that she had regularly operated over the previous four years. Plaintiff had to push the cone on to the spindle using her body weight. She twisted the cone with her left hand to the left. When she removed the cone from the square spindle, she had to turn her left wrist backwards in order to pull the cone off the square spindle.
5. After operating the new machine for about five hours on March 23, 1993, plaintiff's left hand began to swell and her left arm began tingling. Plaintiff developed a blister on the inside of her palm. At closing time, plaintiff reported the pain she was experiencing as well as the blister to her supervisor, Ray Jones.
6. The next morning on March 24, 1993, plaintiff woke up with a bruise on her left hand and she had difficulty moving her fingers. Plaintiff was directed by her supervisor to go back to work on the same machine that she had operated the day before. After about four hours, plaintiff's left hand was turning purple and swelling. Plaintiff went to the plant nurse holding her left arm. Plaintiff was experiencing tingling in her left hand and a burning sensation in her left shoulder.
7. On March 26, 1993 plaintiff came under the care of physicians at McDowell Family Medical Center where she began a course of treatment that included various pain medications, anti-inflammatories and physical therapy. Plaintiff's condition did not significantly improve under the care of the physicians at the McDowell Family Medical Center.
8. On May 6, 1993, plaintiff came under the care of Dr. Crosby. Dr. Crosby prescribed a course of treatment that included stellate ganglion blocks. Dr. Crosby restricted the plaintiff from using her left hand and expressly informed nurse Woody that no effort should be made at getting plaintiff back to winding using the small dimensional bobbins at that particular point in time.
9. The defendant-employer made light duty work available to the plaintiff pursuant to the restrictions set forth by Dr. Crosby. Plaintiff burned bobbings on a rack. Plaintiff could sit down or stand up while using an electric knife to burn the bobbing. This job could be done with one hand.
10. On May 21, 1993 plaintiff was wearing a hand brace prescribed by Dr. Cunningham, a physician at the McDowell Family Medical Center. Plant nurse Juanita Woody made plaintiff take the brace off of her wrist. Nurse Woody made the plaintiff open and close her left hand. Plaintiff experienced a great deal of pain in performing this maneuver. Plaintiff became very upset and explained to nurse Woody that the brace helped lessen her pain. Plaintiff took her brace back from nurse Woody. Plaintiff informed Ms. Woody that her nerves couldn't take this treatment anymore and that she was going to contact a lawyer.
11. On May 24, 1993, plaintiff was called into the office for a meeting with Juanita Woody, Kenny Greene, and Wade Bowman. Ms. Woody suggested to the plaintiff that she was pretending to be having problems with her hand. Plaintiff was informed that she would have to be able to go back to industrial winding or she would be out of a job.
12. Following the meeting on March 24, 1993, Kenny Green, industrial relations manager for the defendant-employer, communicated to plaintiff that she could take personal leave as long as she needed. Plaintiff was given personal leave until June 1, 1993. Plaintiff did not contact the defendant-employer requesting an extension of her personal leave after this date. Plaintiff's personal leave was extended to June 7, 1993. Plaintiff did not contact the defendant-employer requesting an extension of her personal leave. Plaintiff's personal leave was extended to July 12, 1993. Plaintiff was unaware that her personal leave had been limited to a specific date and then extended to a specific date.
13. In a letter dated July 19, 1993, Superintendent Keith Lyerly notified plaintiff that her job had been terminated because she failed to request for an extension for personal leave three days prior to July 12, 1993. Company policy requires the employee to notify the defendant-employer at least three days in advance before an extension is granted. Plaintiff was not terminated for gross misconduct.
14. Plaintiff has never been released to return to full duty work as an industrial winder.
15. As a result of the work related incident on March 23, 1993, plaintiff has sustained reflex sympathetic dystrophy in her left shoulder and hand.
16. Since July 19, 1993, plaintiff has received no medical treatment for the injury to her left shoulder and hand. Plaintiff has not reached maximum medical improvement with regard to the injury to her left shoulder and hand.
17. Plaintiff made a reasonable job search that resulted in obtaining work as a custodian for McDowell High School. Plaintiff worked for twenty-eight days but had to quit because she was unable to do the lifting with her left arm required to perform this job.
18. Plaintiff's average weekly wage on March 23, 1993 was $297.03.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On March 23, 1993 plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant-employer in that she sustained reflex sympathetic dystrophy in her left shoulder and hand as a result of the work assigned. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff is entitled to receive temporary total disability compensation at a rate of $198.11 per week for the time period beginning July 19, 1993 and continuing until plaintiff returns to work earning an average weekly wage comparable to the wages she was earning on March 23, 1993. Defendants are entitled to a credit for wages earned in the custodian job performed during this time period. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent it tends or tended to effect a cure give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay to the plaintiff temporary total disability compensation in the amount of $198.11 per week for the time period beginning July 12, 1993 and continuing to the present and until plaintiff returns to work earning comparable wages to the wages plaintiff was earning at the time of her injury by accident. Defendants shall receive a credit for the wages earned by the plaintiff as a custodian during this time period. The portion of this award that has accrued shall be paid in a lump sum subject to the attorney's fee approved below.
2. Defendants shall pay all medical expenses incurred or to be incurred by the plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded in paragraph 1 is hereby approved for plaintiff's counsel. The accrued portion of the fee shall be deducted from the accrued benefits and paid directly to counsel for the plaintiff. Thereafter, defendants shall forward every fourth check of compensation benefits to plaintiff's counsel until plaintiff returns to work earning full wages.
4. Defendants shall pay an expert witness fee in the amount of $135.00 to Dr. Lawless and $235.00 to Dr. Crosby.
5. Defendants shall pay the costs.
FOR THE FULL COMMISSION
 S/ __________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ____________________________ DIANNE C. SELLERS COMMISSIONER
S/ ____________________________ LAURA K. MAVRETIC COMMISSIONER
CMV/cnp/mj 9/26/96